1 | KAREN P. HEWITT
United States Attorney
2 | JILL L. BURKHARDT
Assistant U.S. Attorney
3 | California State Bar No. 137984
Jill.L.Burkhardt@usdoj.gov
4 | United States Office Building
880 Front Street, Room 6293
5 | San Diego, California  92101
Telephone:  (619) 557-7047
6 |
Attorneys for Plaintiff
7 | United States of America

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10 | UNITED STATES OF AMERICA,           )   Criminal Case No. 07cr3245-BEN
                                        )
11 |                 Plaintiff,          )   DATE: March 24, 2008
                                        )   TIME:  2:00 p.m.
12 |       v.                            )
                                        )   GOVERNMENT'S RESPONSE AND
13 | ESEQUIEL LOPEZ (1),                 )   OPPOSITION TO DEFENDANT'S
       aka Cheque,                       )   MOTION TO COMPEL DISCOVERY
14 | ARMANDO REGALADO-NARANJO (2),       )   AND FOR LEAVE TO FILE OTHER
                                        )   MOTIONS
15 |                                     )
                  Defendants.            )   TOGETHER WITH STATEMENT OF
16 |                                     )   FACTS, MEMORANDUM OF POINTS AND
                                        )   AUTHORITIES AND GOVERNMENT'S
17 | _____)   MOTION FOR RECIPROCAL DISCOVERY

18        COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

19 Karen P. Hewitt, United States Attorney, and Jill L. Burkhardt, Assistant United States Attorney,

20 and hereby files its response and opposition to discovery motions filed by defendant Esequiel

21 Lopez.  Said response is based upon this response and opposition, the files and records of the case,

22 argument and Government's motion for reciprocal discovery.

# I.

# **STATEMENT OF FACTS**

Esequiel Lopez is the head of a marijuana transportation cell for a Mexico-based marijuana drug trafficking organization operating out of Jacume, Mexico, south of the Campo/Boulevard/Jacumba area. Lopez conspired with Armando Regalado-Naranjo and others to recruit, coordinate, guide, direct and pay load drivers to transport hundred-kilo quantities of marijuana within the United States. The Lopez/Regalado conspiracy was responsible for transporting in excess of 1000 kilograms of marijuana in the time period between March 18, 2005 and May 22, 2007.

As this conspiracy typically worked, Lopez (or those working for Lopez) would direct drivers to locations near the border, where backpackers would load marijuana into their vehicles. The drivers would then await instructions regarding moving through the checkpoint. Once it was confirmed that the checkpoint was not in operation, the load drivers were directed to drive immediately towards San Diego. After the vehicles successfully passed through the checkpoint, Lopez or Regalado would escort the load vehicles to various locations in the greater San Diego area where they would park in public areas and wait for other members of the DTO to pick up the vehicles, drive them to nearby stash locations, and then return with the empty load vehicles. Thereafter, Lopez would pay the drivers.

Agents have seized multiple loads driven by drivers recruited and directed by Lopez and Regalado.

<u>March 18, 2005</u>. On March 18, 2005, Border Patrol Agents pulled over a Toyota Camry on Tierra del Sol Road in Boulevard, California. The vehicle was stopped because of its proximity to the border and because it appeared weighted down in the back. When the agents contacted the driver (Kim Marie Morgan) and the passenger (Deserae Marie Harper), they noticed a partially covered onion sack in the vehicle and smelled a strong smell of marijuana. When asked if there was marijuana in the sack, the driver nodded. A search of the vehicle revealed 167 pounds of marijuana in the onion sack.

<u>May 23, 2006</u>. On May 23, 2006, at 9:30 a.m., Kenneth Christensen drove a Ford F-150 pick-up to the I-8 checkpoint at Pine Valley. A dog alerted to his vehicle, and he was referred to the secondary inspection area, where 452 pounds of marijuana were found in his truck.

<u>September 22, 2006</u>. On September 22, 2006, as part of an undercover operation, DEA S/A Oldfield took possession of a Government van which had been loaded with marijuana by this DTO. S/A Oldfield observed seven military style duffle bags in the back of the vehicle. S/A Oldfield drove the vehicle to a location in El Cajon. S/A Oldfield field-tested the marijuana. DEA S/A Ramirez videotaped the inside of the vehicle and the duffle bags.

At 3:45, Lopez arrived at S/A Oldfield's location in a gold Chevy Silverado pickup, accompanied by his brother, Ismael Lopez. S/A Oldfield asked Lopez if he had the money, and Lopez stated that he would not have the money until the vehicle was delivered. Lopez tried to convince S/A Oldfield to resume driving the load vehicle to its appropriate delivery spot, but he refused. Lopez himself took over driving the load vehicle, with Ismael Lopez following him in the gold Silverado.

Ismael Lopez drove away in the gold Silverado, following behind Lopez in the load car. As the vehicles proceeded west on I-8 and south on 125, through heavy traffic, Ismael Lopez repeatedly maneuvered his vehicle across lanes, preventing law enforcement from keeping up with the load vehicle. Ismael Lopez was pulled over by CHP, identified and released.

Surveillance agents continued to follow the load vehicle. Lopez pulled off at the next exit and engaged in counter-surveillance activities. Specifically, he pulled into a mall, turned around and stopped, watching traffic go by. After two to three minutes, he got back on the freeway and drove to an Albertson's parking lot in Chula Vista, where he was met by a man who arrived in a white Dodge van. Lopez got out of the load vehicle, and the other driver got in and drove the vehicle to a house in Chula Vista. Agents observed the driver transfer packages from the back of the load vehicle into the garage of the house. The driver drove the empty load vehicle back to the Albertson's parking lot and delivered it to Lopez. Lopez returned the mall in the empty load vehicle, with his brother Ismael following in the gold Silverado. Lopez paid S/A Oldfield $3,500

1 and said he would be interested in working with him in the future. Lopez and his brother left in
2 the gold Silverado.
3       <u>February 28, 2007</u>. On February 28, 2007, Linden Brown was stopped driving a Chevrolet
4 pick-up truck on Jewel Valley Road in Boulevard, California. Concealed within a cylindrical tank
5 in the bed of the truck was 481.58 pounds of marijuana.
6       <u>May 22, 2007</u>. On May 22, 2007, Jonathan Huffstutler was arrested after abandoning a Ford
7 Bronco on Calexico Street in Jacumba and fleeing on foot. The Ford Bronco contained 706.06
8 pounds of marijuana.
9       For each of these seizures, and others, agents were able to tie the loads to Lopez and
10 Regalado through some or all of the following: agent surveillance, telephone toll analysis, hotel
11 records and Confidential Source testimony.
12       On March 15, 2008, Lopez and Regalado were both arrested on the instant indictment. Each
13 was advised of his <u>Miranda</u> rights and each waived his rights, agreeing to speak to agents without
14 an attorney present. Each confessed to recruiting drivers to transport marijuana.

**II.**

**POINTS AND AUTHORITIES**

**A.    STANDARD DISCOVERY REQUESTS**

18 The Government has produced approximately 700 pages of discovery and one video disc in
19 this matter. The Government will continue to provide discovery in a timely fashion.

    1.    The Government Already Has Disclosed Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure

22 The government already has disclosed defendant's statements subject to discovery under
23 Fed. R. Crim. P. 16(a)(1)(A) (substance of defendant's oral statements *in response to government*
24 *interrogation*) and 16(a)(1)(B) (defendant's relevant written or recorded statements, written
25 records containing substance of defendant's oral statements *in response to government*
26 *interrogation*, and defendant's grand jury testimony).

    2.    <u>The Government Will Comply With Rule 16(a)(1)(D)</u>

28 Each defendant has been or soon will be provided with his or her own "rap" sheet and the
government will produce any additional information it uncovers regarding each defendant's

1  criminal record. Any subsequent or prior similar acts of defendants that the government intends
2  to introduce under Rule 404(b) of the Federal Rules of Evidence will be provided, along with any
3  accompanying reports, at the reasonable time in advance of trial.

4          3.        The Government Will Comply With Rule 16(a)(1)(E)

5  The government will permit defendant to inspect and copy or photograph all books, papers,
6  documents, data, photographs, tangible objects, buildings or places, or portions thereof, that are
7  material to the preparation of defendant's defense or are intended for use by the government as
8  evidence-in-chief at trial or were obtained from or belong to defendant.

9  Reasonable efforts will be made to preserve relevant physical evidence which is in the
10 custody and control of the investigating agency and the prosecution, with the following exceptions:
11 drug evidence, with the exception of a representative sample, is routinely destroyed after 60 days,
12 and vehicles are routinely and periodically sold at auction. Records of radio transmissions, if they
13 existed, are frequently kept for only a short period of time and may no longer be available.
14 Counsel should contact the Assistant assigned to the case two weeks before the scheduled trial date
15 and the Assistant will make arrangements with the case agent for counsel to view all evidence
16 within the government's possession.

17         5.        The Government Will Comply With Rule 16(a)(1)(F)

18 The government will permit defendant to inspect and copy or photograph any results or
19 reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof,
20 that are within the possession of the government, and by the exercise of due diligence may become
21 known to the attorney for the government and are material to the preparation of the defense or are
22 intended for use by the government as evidence-in-chief at the trial. Counsel for defendant should
23 contact the Assistant United States Attorney assigned to the case and the Assistant will make
24 arrangements with the case agent for counsel to view all evidence within the government's
25 possession.

26         6.        The Government Will Comply With Its Obligations Under Brady v.
27                     Maryland

28 The government is well aware of and will fully perform its duty under Brady v. Maryland,
373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976) to disclose exculpatory

1  evidence within its possession that is material to the issue of guilt or punishment. Defendant,
2  however, is not entitled to all evidence known or believed to exist that is, or may be, favorable to
3  the accused, or that pertains to the credibility of the government's case. As stated in United States
4  v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

611 F.2d at 774-775 (citations omitted). See also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial privileges not contained in the Federal Rules of Criminal Procedure).

### 7. Discovery Regarding Government Witnesses

This case involves one or more Confidential Sources. The Government has produced the preliminary discovery in this case in a fashion to minimize the likelihood of disclosure of which individuals may or may not be Confidential Sources. This has been done for the safety of any Confidential Sources and to keep open the opportunity for a favorable disposition for the defense. If this case cannot be resolved at the preliminary stages, additional discovery will be provided.

a.  Agreements. The Government will disclose the terms of any agreements by Government agents, employees or attorneys with witnesses that testify at trial. Such information will be provided at the time of the filing of the Government's trial memorandum.[1] The Government will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972).

b.  Bias or Prejudice. The Government will provide information related to the bias, prejudice or other motivation to lie of Government trial witnesses as required in Napue v. Illinois, 360 U.S. 264 (1959).

---

[1] As with all other offers by the Government to produce discovery earlier than it is required to do, the offer is made without prejudice. If, as trial approaches, the Government is not prepared to make early discovery production, or if there is a strategic reason not to do so as to certain discovery, the Government reserves the right to withhold the requested material until the time it is required to be produced pursuant to discovery laws and rules.

    c. <u>Criminal Convictions</u>. The Government has produced or will produce any criminal convictions of Government witnesses plus any <u>material</u> criminal acts which did not result in conviction. The Government is not aware that any prospective witness is under criminal investigation.

    d. <u>Ability to Perceive</u>. The government will produce in discovery any evidence that the ability of a government trial witness to perceive, communicate or tell the truth is impaired or that such witnesses have ever used narcotics or other controlled substances, or are alcoholics.

    e. <u>Witness List</u>. The Government will endeavor to provide the defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required. See <u>United States v. Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Culter</u>, 806 F.2d 933, 936 (9th Cir. 1986); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible Government witnesses. See <u>United States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir. 1977), <u>cert. denied</u>, 419 U.S. 834 (1974). The defendant has already received access to the names of potential witnesses in this case in the investigative reports previously provided to him.

    f. <u>Witnesses Not to Be Called</u>. The Government is not required to disclose all evidence it has or to make an accounting to the defendant of the investigative work it has performed. <u>Moore v. Illinois</u>, 408 U.S. 786, 795 (1972); see <u>United States v. Gardner</u>, 611 F.2d 770, 774-775 (9th Cir. 1980). Accordingly, the Government objects to defendant's request for discovery concerning any individuals whom the Government does not intend to call as witnesses.

    g. <u>Favorable Statements</u>. The Government has disclosed or will disclose the names of witnesses, if any, who have made favorable statements concerning the defendant which meet the requirements of <u>Brady</u>.

    h. <u>Review of Personnel Files</u>. The Government will request a review of the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for <u>Brady</u> material. The Government will request that counsel for the appropriate federal

law enforcement agency conduct such review. United States v. Herring, 83 F.3d 1120 (9th Cir. 1996); see, also, United States v. Jennings, 960 F.2d 1488, 1492 (9th Cir. 1992); United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v. Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable to the defense that meets the appropriate standard of materiality . . ." United States v. Cadet, 727 F.2d at 1467, 1468. Further, if counsel for the United States is uncertain about the materiality of the information within its possession in such personnel files, the information will be submitted to the Court for in camera inspection and review.

    i. Government Witness Statements. Production of witness statements is governed by the Jencks Act (Title 18, United States Code, Section 3500) and need occur only after the witness testifies on direct examination. United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir. 1981)). Indeed, even material believed to be exculpatory and therefore subject to disclosure under the Brady doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. See United States v. Bernard, 623 F.2d 551, 556-57 (9th Cir. 1979).

The government reserves the right to withhold the statements of any particular witnesses it deems necessary until after the witness testifies. Otherwise, the government will disclose the statements of witnesses at the time of the filing of the government's trial memorandum before trial, provided that defense counsel has complied with defendant's obligations under Federal Rules of Criminal Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse Jencks" statements at that time.

    8. The Government Objects To The Full Production Of Agents' Handwritten Notes At This Time

Although the government has no objection to the preservation of agents' handwritten notes, it objects to requests for full production for immediate examination and inspection. If certain rough notes become relevant during any evidentiary proceeding, those notes will be made available.

1    Prior production of these notes is not necessary because they are not "statements" within the
2    meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a
3    witness' assertions <u>and</u> they have been approved or adopted by the witness. <u>United States v.</u>
4    <u>Spencer</u>, 618 F.2d 605, 606-607 (9th Cir. 1980); <u>see</u> <u>also</u> <u>United States v. Griffin</u>, 659 F.2d 932,
5    936-938 (9th Cir. 1981).

6    9.    <u>All Investigatory Notes and Arrest Reports</u>

7    The government objects to the defendant's request for production of all arrest reports,
8    investigator's notes, memos from arresting officers, and prosecution reports pertaining to the
9    defendant. Such reports, except to the extent that they include <u>Brady</u> material or the statements
10   of defendant, are protected from discovery by Rule 16(a)(2) as "reports . . . made by . . .
11   Government agents in connection with the investigation or prosecution of the case."

12   Although agents' reports have already been produced to the defense, the government is not
13   required to produce such reports, except to the extent they contain <u>Brady</u> or other such material.
14   Furthermore, the government is not required to disclose all evidence it has or to render an
15   accounting to defendant of the investigative work it has performed. <u>Moore v. Illinois</u>, 408 U.S.
16   786, 795 (1972); <u>see</u> <u>United States v. Gardner</u>, 611 F.2d 770, 774-775 (9th Cir. 1980).

17   10.    <u>Expert Witnesses</u>.

18   Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial memorandum,
19   the Government will provide the defense with notice of any expert witnesses the testimony of
20   whom the Government intends to use under Rules 702, 703, or 705 of the Fed. R. of Evidence in
21   its case-in-chief. Such notice will describe the witnesses' opinions, the bases and the reasons
22   therefor, and the witnesses' qualifications. Reciprocally, the Government requests that the defense
23   provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

24   11.    <u>Information Which May Result in Lower Sentence</u>.

25   Defendant claims that the Government must disclose information about any cooperation or
26   any attempted cooperation with the Government as well as any other information affecting
27   defendant's sentencing guidelines because such information is discoverable under <u>Brady v.</u>
28   <u>Maryland</u>. The Government respectfully contends that it has no such disclosure obligations under
     <u>Brady</u>.

1     The Government is not obliged under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), cert. denied, 479 U.S. 1094 (1987); United States v. Prior, 546 F.2d 1254, 1259 (5th Cir. 1977). Brady is a rule of disclosure. There can be no violation of Brady if the evidence is already known to the defendant. Assuming that defendant did not already possess the information about factors which might affect their respective guideline ranges, the Government would not be required to provide information bearing on defendant's mitigation of punishment until after defendant's conviction or plea of guilty and prior to his sentencing date. "No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains of value." United States v. Juvenile Male, 864 F.2d 641 (9th Cir. 1988).

### III

### RECIPROCAL DISCOVERY

The Government hereby requests the defendant to deliver all material to which the Government may be entitled under Fed. R. Crim. P. 16(b) and 26.2.

### IV

### CONCLUSION

For the foregoing reasons, the Government respectfully requests that the defendant's motions, except where not opposed, be denied.

DATED: March 17, 2008

                                        Respectfully submitted,

                                        KAREN P. HEWITT
                                        United States Attorney

                                        s/ Jill L. Burkhardt

                                        JILL L. BURKHARDT
                                        Assistant U.S. Attorney
                                        Jill.Burkhardt@usdoj.gov

|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA | |
| 3 | UNITED STATES OF AMERICA, ) | Case No. 07cr3245-BEN |
| 4 | Plaintiff, ) | |
| 5 | v. ) | CERTIFICATE OF SERVICE |
| 6 | ESEQUIEL LOPEZ (1), ) aka Cheque, ) | |
| 7 | ARMANDO REGALADO-NARANJO (2)) ) | |
| 8 | Defendants. ) | |

IT IS HEREBY CERTIFIED THAT:

    I, JILL L. BURKHARDT, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of Government's Response and Opposition to Defendant's Motion to Compel Discovery and for Leave to File Further Motions on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1. Francisco Sanchez
    2. Manuel Ramirez

    I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 17, 2008

                                    s/ Jill L. Burkhardt
                                    JILL L. BURKHARDT